## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

JACKY GILBERT,

       Petitioner,

v.                                        Case No. 4:20-cv-135-AW-MJF

RICKY D. DIXON,[1]

       Respondent.

_____/

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner Jacky Gilbert has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 4. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 12. Gilbert replied. Doc. 14. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Gilbert is not entitled to habeas relief.[2]

---

[1] Ricky D. Dixon succeeded Mark S. Inch as Secretary of the Florida Department of Corrections, and is automatically substituted as the Respondent. *See* Fed. R. Civ. P. 25(d).

[2] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. Background Facts and Procedural History[3]

On the evening of January 3, 2013, the victims in this case—Reggie Norton, Kimani Newton and Clarence Brown—were watching television inside Norton's home when Gilbert and his co-defendant (Maurice Davis) came to the home and attempted to rob them at gunpoint. Doc. 12, Exs. 3-5 (Trial Tr.).[4] During the course of the attempted robbery, Gilbert shot Norton and Newton. *Id*. In Leon County Circuit Court Case No. 2013-CF-20, Gilbert was charged with (1) Attempted Armed Robbery With a Firearm (Count I); (2) Aggravated Battery of Newton With a Firearm (Count II); (3) Aggravated Battery of Norton With a Firearm (Count III); and (4) Possession of a Firearm by a Convicted Felon (Count IV). Ex. 2.

On May 12-13, 2015, Gilbert was tried on Counts I-III. *See* Exs. 3-5. Gilbert's theory of defense was that he and Davis did not go to Norton's home to rob anyone but merely to buy marijuana, and that he acted in self-defense and in defense of Davis. Ex. 5 at 52-93 (Gilbert's Trial Test.); *see also* Ex. 15 at 10 (Defense Counsel's Test. Explaining Gilbert's Defense). The jury found Gilbert guilty of Counts I-III as

---

[3] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. *See Jackson v. Virginia*, 443 U.S. 307 (1979).

[4] Citations to the state-court record are to the electronically-filed exhibits attached to the State's answer. Doc. 12. The citation refers to the exhibit number followed by the page number assigned by the court's Electronic Case Filing system ("ECF").

charged. Ex. 7 (Verdicts); *see also* Ex. 5 at 155-56. The jury made specific findings—on each count—that in the course of committing the particular offense Gilbert actually possessed and discharged a firearm causing great bodily injury. *Id.*

The trial court adjudicated Gilbert guilty of Counts I-III and sentenced him to a total term of 55 years of imprisonment. Ex. 8 (Am. Judgment).[5] The Florida First District Court of Appeal ("First DCA") affirmed on April 20, 2017, *per curiam* and without written opinion. *Gilbert v. State*, 225 So. 3d 803 (Fla. 1st DCA 2017) (Table) (copy at Ex. 12).

On January 25, 2018, Gilbert filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising five grounds of ineffective assistance of trial counsel. Ex. 13. The state circuit court conducted an evidentiary hearing during which Gilbert was assisted by counsel. Ex. 15 (Evidentiary Hr'g Tr.). At the close of the hearing, the state court denied relief, making oral findings on the record. *Id.* at 60-67. The court reduced its rulings to a written order filed on September 20, 2018. Ex 16. The First DCA affirmed *per curiam* and without written opinion. *Gilbert v. State*, 279 So. 3d 84 (Fla. 1st DCA 2019) (Table) (copy at Ex. 21). The mandate issued September 26, 2019. *Id.*

---

[5] Count IV was "nolle prossed."

On December 14, 2020, Gilbert filed a habeas petition in the First DCA alleging ineffective assistance of postconviction appellate counsel. Doc. 14, Ex. 2. The First DCA dismissed the petition *per curiam* on April 14, 2021, explaining:

> The petition alleging ineffective assistance of appellate counsel alleges ineffective assistance of Petitioner's postconviction appellate counsel in case 1D18-4111. As Florida Rule of Appellate Procedure 9.141(d) does not provide a vehicle to challenge postconviction appellate counsel's effectiveness, the petition is dismissed. *See* Fla. R. App. P. 9.141(d)(5) (indicating that such a petition is available to challenge the effectiveness of "appellate counsel on direct review"); *cf. Hunter v. State*, 48 So. 3d 836 (Fla. 2010).

*Gilbert v. State*, 315 So. 3d 791 (Fla. 1st DCA 2021).

Gilbert then petitioned the First DCA for a belated postconviction appeal, which was denied on July 27, 2021, *per curiam* and without written opinion. *Gilbert v. State*, 322 So. 3d 1117 (Fla. 1st DCA 2021) (Table).

Gilbert filed his *pro se* federal habeas petition on March 6, 2020, which he later amended. Docs. 1, 4. Gilbert's amended petition presents four grounds for relief. Doc. 4 at 9-15. The State asserts that Gilbert is not entitled to habeas relief because (1) he procedurally defaulted all but one of his claims, and (2) all of his claims lack merit. Doc. 12.

## II. RELEVANT LEGAL PRINCIPLES

### A. Federal Habeas Exhaustion Requirement

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim" to the state's highest court, either on direct appeal or on collateral review. *Picard*, 404 U.S. at 277-78; *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

When a petitioner fails to exhaust his claim and the state court remedy no longer is available, that failure to exhaust is a procedural default. *O'Sullivan*, 526 U.S. at 839-40; *see also Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999) (holding that when a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim now would be procedurally barred under state law, the claim is procedurally defaulted). A petitioner seeking to overcome a

procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that that was not presented at trial.

*Id*., 513 U.S. at 327.

## B.     Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United

States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[6] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the

---

[6] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application"

clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v.*

*Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.</u>

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## C.    Federal Law Governing Claims of Ineffective Assistance of Counsel

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371

(2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III. DISCUSSION

**Ground One**      <u>**"Counsel rendered ineffective assistance of counsel by failing to request the Court for the independent acts jury instruction." Doc. 4 at 9.**</u>

Gilbert claims that his trial counsel, William Sharpe, was ineffective for failing to request a jury instruction on Florida's "independent act" doctrine. Gilbert explains:

> The Petitioner was picked up by a Mr. Davis around 7pm the night of the incident. Petitioner told Davis he wanted to smoke some marijuana. So, Davis picked up a "bumpy Jay" and they went to 1434 Hudson street, where gunplay ensued. Petitioner was not aware of co-Defendant's true intent.

Doc. 4 at 9.

The Florida Supreme Court has explained the "independent act" doctrine as follows:

> The "independent act" doctrine arises when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, "which fall outside of, and are foreign to, the common design of the original collaboration." *Dell v. State*, 661 So. 2d 1305, 1306 (Fla. 3d DCA 1995) (quoting *Ward v. State*, 568 So. 2d 452 (Fla. 3d DCA 1990)). Under these limited circumstances, a defendant whose cofelon exceeds the scope of the original plan is exonerated from any punishment imposed as a result of the independent act. *Id*. *See also Parker v. State*, 458 So.2d 750 (Fla. 1984).

*Ray v. State*, 755 So. 2d 604, 609 (Fla. 2000) (holding that no independent act instruction was warranted because both co-defendants were participants in the robbery).

Florida's standard jury instruction on Independent Act provides:

> If you find that the crime alleged was committed, an issue in this case is whether the crime of [crime alleged] was an independent act of a person other than the defendant. An independent act occurs when a person other than the defendant commits or attempts to commit a crime
>
> 1. which the defendant did not intend to occur, and
>
> 2. in which the defendant did not participate, and
>
> 3. which was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant.
>
> If you find the defendant was not present when the crime of [crime alleged] occurred, that, in and of itself, does not establish that the [crime alleged] was an independent act of another.

Page 13 of 31

> If you find that the [crime alleged] was an independent act of
> [another] [(name of individual)], then you should find (defendant) not
> guilty of the crime of [crime alleged].

Fla. Std. Jur. Inst. (Crim.) 3.6(*l*) (1997).

The parties agree that Gilbert exhausted his state remedies by presenting this ineffective-assistance claim in his Rule 3.850 motion and postconviction appeal. Doc. 4 at 9-10; Doc. 12 at 23, 34. The State asserts that Gilbert is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 12 at 33-36.

**A.    State Court's Decision**

Gilbert presented this claim to the state courts as Ground One of his amended Rule 3.850 motion. Ex. 13. The state circuit court denied relief, stating its reasons at the close of the postconviction evidentiary hearing:

> [THE COURT]:  As to Ground 1, I don't know that his motion really
> does this, but it's been argued here and so I will rule on both that it was
> ineffective not to object to the principal and it was ineffective not to
> request independent act instruction. I think his motion more clearly
> indicates it was error not to request the independent act instruction, but
> there is some discussion about the principal instruction so I'll rule on
> both of those as Grounds 1A and B.
>
> First, as to both of these, as far as I can figure out, it really only
> has application to the attempted robbery charge. As to the two
> aggravated battery charges, principal really has no relevance. I mean,
> the testimony before the Court is that Mr. Gilbert was the one doing the
> shooting so the principal doesn't have much to do with that.

Page 14 of 31

I don't find as to the principal instruction it was error to fail to object. That was not ineffective. Any objection would have been overruled.

I think the principal instruction was appropriate in this case. The circumstances are sufficient to give the instruction with the testimony being Mr. Gilbert and Mr. Davis approached the front door together and when they came in were brandishing firearms. I think it's sufficient for the principal instruction.

As to the failure to request the independent act instruction, it should have been requested. And had it been requested, I believe Judge Lewis would have given that instruction.

And let me say this as an aside, not to confuse things, but I didn't try this case, Judge Lewis did try this case. However, I tried the codefendant, Mr. Davis. And, in fact, we've had post-conviction proceedings as to Mr. Davis recently. So I'm – although I didn't specifically try this case, I'm very familiar with the facts of the case. I've also reviewed the transcript.

So, anyway, it probably should have been requested, but I don't find that it was ineffective assistance of counsel not to request it. I think attorneys would reasonably differ on the significance of it in this case.

If I understood Mr. Sharpe's testimony, he was aware of the independent act instruction; he just did not believe it was applicable here. Again, what he says he was focused on were the two aggravated battery charges. I think he should have requested it, but I don't think it was ineffective to fail to do so.

As to the prejudice, I'm more – I'm more comfortable with that. I don't find there was any prejudice. I could see confusion if Mr. Davis and Mr. Gilbert were being tried together. They were being tried separately.

>    The jury made a determination based upon their jury verdict that this defendant participated in the attempted robbery. I can't see how there was any confusion about that. There was testimony of his involvement. I don't see there is any reasonable likelihood that a jury would have made a different decision, had the independent act instruction been given.

Ex. 15 at 61-63. The court reduced its ruling to a written order which stated, in relevant part:

>    THIS MATTER coming on to be heard upon the Defendant's Motion For Postconviction Relief filed on February 2, 2018, pursuant to Fla. R. Cr. P. 3.850, and the Court having conducted an evidentiary hearing on September 20, 2018, having reviewed the file and being otherwise advised in the premises, it is hereby

>    ORDERED AND ADJUDGED that the motion be denied. Based on the reasons as announced on the record, the Court finds that defendant has failed to show that he received ineffective assistance of counsel or that he was prejudiced by any alleged deficiency.

Ex. 16. The First DCA summarily affirmed without explanation. Ex. 21.

### B.    Gilbert's Claim Does Not Warrant Habeas Relief

The First DCA's summary affirmance is an "adjudication on the merits" of Gilbert's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that §

2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's reasoned ruling and presumes that the First DCA adopted the same reasoning. *See Wilson v. Sellers*, ___ U.S. ___, 138 S. Ct. 1188, 1192 (2018) (holding that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

The state court's rejection of Gilbert's claim was neither contrary to, nor an unreasonable application of, *Strickland*'s prejudice prong. *See Strickland*, 466 U.S. at 697 (holding that a court may dispose of an ineffective assistance claim if the petitioner fails to carry his burden on either of the two prongs). The state court reasonably determined that Gilbert was not prejudiced by the absence of an independent act instruction because it was not reasonably likely the jury would have accepted the independent act theory if instructed on it.

The State's case was not predicated solely on Gilbert's presence at the scene. Rather, there was eyewitness testimony that when Clarence Brown opened Norton's front door, both Gilbert and Davis were standing there with firearms, and that they both drew their firearms while one announced, "Y'all know what time it is." Ex. 3 at 67-68, 70.

Specifically, Kimani Newton testified that when he, Norton and Brown heard a knock on Norton's front door, Brown went to answer it. Ex. 3 at 19-20. As Brown started to open the door, a male (later identified as Davis) barged in holding a gun. *Id*. at 20. Gilbert, meanwhile, remained in the doorway pointing a gun into the home. *Id*. at 21-23, 47. Newton thought Gilbert fired into the home, so Newton fired "a high shot . . . like a warning shot" in Gilbert's direction. *Id*. at 23. Brown and Davis were scuffling for control of Davis's gun. *Id*. at 20. Newton then fired at Davis and shot him. *Id*. at 25. By that time, Gilbert had fled to the front yard. *Id*. at 26. When Davis realized he had been shot, he ran to the front door and yelled to Gilbert that he had been shot. *Id*. at 25. Gilbert then started firing into Norton's house. *Id*. at 26-27. One of Gilbert's shots hit Newton. *Id*.

Reggie Norton testified that he heard a knock at his front door. Ex. 3 at 64. After Brown went to the door and asked who it was, Norton heard a voice that he did not recognize. *Id*. at 65. Brown asked again who it was and the person on the

other side of the door said "where is Reggie at?" *Id*. at 66. Brown opened the door and one man (Davis) entered while a second man (Gilbert) stood right outside the door–"halfway in but still outside the house." *Id*. at 66, 68. After a 5-second pause, both Davis and Gilbert drew their guns and one of them said, "Y'all know what time it is." *Id*. at 67-68, 70. At that point, Norton realized that he, Brown and Newton were being robbed. *Id*. at 68. Brown started struggling with Davis for control of Davis's gun. *Id*. at 69. Newton fired a "warning shot," and Gilbert ran outside. *Id*. at 69-70. After Davis yelled to Gilbert that he had been shot, Gilbert "circled back around to a window" on the side of Norton's house and "busted glass and start[ed] firing back into the window." *Id*. at 70-72. One of Gilbert's bullets hit Norton in the leg. *Id*. at 72-73.

Gilbert gave a statement to police indicating that he and Davis drove to Norton's house to get marijuana, which Gilbert had purchased from the home before. Ex. 4 at 62. Gilbert admitted that he went to the door with Davis and asked for "Reggie." *Id*. at 79, 83-84. Gilbert told police that one of the men inside the home fired first. *Id*. at 67-68, 79, 84. Gilbert also told police that the drug deal went south because someone he was with pulled a pistol. *Id*. at 81-82. Gilbert admitted to police that his blood and DNA probably would be near the broken window. *Id*. at 85. Gilbert told police that he started shooting after the men in the home started shooting

at him and Davis. *Id*. at 92-94. Gilbert admitted to police that the gun they recovered from the car (a Ford Taurus he and Davis drove to the scene) was the gun he (Gilbert) used during the shooting. *Id*. at 94.

Gilbert testified at trial that he was the man who went to the door with Davis and stood at the threshold of the door. Ex. 5 at 63-64. Gilbert testified that the men in the apartment fired at them first and that he shot through the window to defend himself and Davis who had been shot inside. Ex. 5 at 52, 66-70.

The jury found Gilbert guilty of all counts as charged, and specifically found that Gilbert actually possessed and discharged a firearm during the commission of each offense. In light of Newton's and Norton's testimony, a fairminded jurist could concur in the state court's conclusion that it was not reasonably likely the jury's verdict would have been different had the independent act instruction been given.

The state court's rejection of Gilbert's claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Gilbert is not entitled to habeas relief on Ground One.

**<u>Ground Two</u>**        **<u>"Counsel rendered ineffective assistance of counsel by failing to strike the sleeping juror and replace with alternate." Doc. 4 at 11.</u>**

**<u>Ground Four</u>**       **<u>"Counsel rendered ineffective assistance of counsel by failing to file a sufficient JOA motion and object to the self-defense instruction." Doc. 4 at 15.</u>**

Gilbert claims in Ground Two that trial counsel was ineffective for failing to strike a juror (Juror #1) who was caught sleeping during the trial. Doc. 4 at 11. Gilbert claims in Ground Four that trial counsel was ineffective for making a "boilerplate" motion for judgment of acquittal, and for failing to object to a "faulty" self-defense jury instruction. Doc. 4 at 15.

The parties agree that although Gilbert raised these claims in his Rule 3.850 motion as Grounds Two, Four and Five, he abandoned them in his postconviction appeal. Doc. 4 at 11-12, 16; Doc. 12 at 17, 21-24. The State asserts that Gilbert's failure to complete one full round of Florida's established postconviction process renders these claims procedurally defaulted. Doc. 12 at 17, 21-24. Alternatively, the State argues that even assuming to Gilbert's benefit that he fully and properly exhausted these claims, he is not entitled to habeas relief because the state court's rejection of them involved a reasonable application of the *Strickland* standard. Doc. 12 at 37, 40-42.

Gilbert maintains that his procedural default should be excused because his postconviction appellate counsel (Attorney Lord) was ineffective for failing to argue these issues in Gilbert's postconviction appeal. Doc. 4 at 12, 16; *see also* Doc. 14 at 2 & Exs. 1, 2. Gilbert states that he presented his ineffective-assistance-of-postconviction-appellate-counsel claim to the state courts in his state habeas petition. *Id*.

## A.    Florida's Established Postconviction Process

Florida's established postconviction process requires a defendant seeking to vacate his conviction to (1) move for postconviction relief under Florida Rule of Criminal Procedure 3.850, and (2) appeal from the order denying postconviction relief. *See* Fla. R. Crim P. 3.850(a), (k); Fla. R. App. P 9.141(b)(3); *see also Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979); *Rodwell v. Singletary*, 114 F. Supp. 2d 1308, 1312 (M.D. Fla. 2000).

The Florida Rules of Appellate Procedure provide that, when a movant's Rule 3.850 motion is denied after an evidentiary hearing, a movant wishing to appeal the denial of his motion must file an initial brief. Fla. R. App. P. 9.141(b)(3). Where an appellant's brief contains no argument on a claim, the claim is insufficiently presented for appellate review and therefore waived. *See Duest v. Dugger*, 555 So. 2d 849, 851 (Fla. 1990) (holding that prisoner waived several issues on appeal where

his brief merely cited to arguments contained in his Rule 3.850 motion; "The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived."); *Shere v. State*, 742 So. 2d 215, 217 n.6 (Fla. 1999) (holding that nineteen of prisoner's twenty-three claims raised in his Rule 3.850 motion were "insufficiently presented for [appellate] review" because he "did not present any argument or allege on what grounds the trial court erred in denying these claims."); *State v. Mitchell*, 719 So.2d 1245, 1247 (Fla. 1st DCA 1998) (finding that issues raised in appellate brief which contain no argument are deemed abandoned).

### B.    Gilbert Procedurally Defaulted Grounds Two and Four

Gilbert presented Grounds Two and Four of his federal habeas petition to the state circuit court as Grounds Two, Four and Five of his amended Rule 3.850 motion. Ex. 13. After the circuit court denied relief, however, Gilbert's counseled initial brief in his postconviction appeal challenged only the circuit court's denial of Ground One, discussed above. *See* Ex. 18. (Initial Br.). Gilbert's appellate brief did not challenge the circuit court's denial of any other claims. *Id*. Gilbert, therefore, waived the ineffective-assistance claims he now asserts in Grounds Two and Four of his habeas petition.

Gilbert's failure to exhaust his ineffective-assistance claims renders them procedurally defaulted on habeas review.[7] *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan*, 526 U.S. at 842; *see also Atwater v. Crosby*, 451 F.3d 799, 809-10 (11th Cir. 2006) (petitioner who received an evidentiary hearing on his Rule 3.850 motion procedurally defaulted one of his ineffective-assistance claims when he failed to argue the issue in his postconviction appeal; "Pursuant to state procedural rules, abandonment of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing." (citing *Shere*, 742 So. 2d at 217 n.6)).

## C. Gilbert Makes None Of The Requisite Showings To Excuse His Procedural Default

Gilbert argues that the ineffective assistance of his postconviction appellate counsel serves as cause to excuse his procedural default. Doc. 4 at 12, 16; Doc. 14. This argument is unavailing.

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court "announced an equitable rule whereby a federal petitioner may establish cause, in narrow

---

[7] Gilbert is procedurally barred from returning to state court to appeal these ineffective-assistance claims. *See Gilbert v. State*, 322 So. 3d 1117 (Fla. 1st DCA 2021) (Table) (denying petition for belated postconviction appeal); *see also* Fla. R. Crim. P. 3.850(b), (f) (stating prohibitions on successive Rule 3.850 motions, and those filed more than two years after a defendant's conviction becomes final).

circumstances, to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim." *Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1360 (11th Cir. 2014). Importantly, however—and fatal to Gilbert's argument—"the *Martinez* rule is expressly limited to attorney errors in initial-review collateral proceedings." *Id*. 756 F.3d at 1360. The Court in *Martinez* expressly stated:

> [T]he holding in this case does not concern attorney errors in other kinds of proceedings, including *appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial.

*Martinez*, 566 U.S. at 16 (emphasis added).

Gilbert has not established cause to excuse his procedural default of Grounds Two and Four of his federal habeas petition. Accordingly, he is not entitled to habeas relief of these claims. *See Lambrix*, 756 F.3d at 1360; *see also Owens v. Sec'y, Dep't of Corr.*, No. 17-11007-E, 2019 WL 11854823 at *6 (11th Cir. 2019) (holding that to the extent petitioner sought to raise an ineffective-assistance-of-postconviction-appellate-counsel claim in reference to his procedural default of claims he failed to pursue in his postconviction appeal, "his argument fails because *Martinez* does not apply to attorney errors in appeals from initial-review collateral proceedings." (citing *Martinez*, 566 U.S. at 16)).

Page 25 of 31

**Ground Three**        **"Counsel rendered ineffective assistance of counsel by giving improper advice that he had to testify that he fired the gun in self-defense to overcome the 10-20-Life provision." Doc. 4 at 13.**

Gilbert's final claim is that his trial counsel was ineffective for giving him "improper advice" concerning whether to testify at trial. Doc. 4 at 13. To support this claim, Gilbert alleges, in total: "Counsel gave erroneous advice that in order to overcome the Life sentence under the 10-20-Life statute, he must take the stand and testify that he fired the gun in self-defense or he would receive a mandatory Life sentence." *Id*. at 13. Gilbert states that he raised this claim in his amended Rule 3.850 motion and that it was denied after an evidentiary hearing. *Id*. at 14. Gilbert asserts that he did not appeal the denial of relief because his postconviction appellate counsel was ineffective. *Id*.

The State asserts that Gilbert procedurally defaulted this claim because he expressly abandoned it at the postconviction evidentiary hearing and did not raise it in his postconviction appeal. Doc. 12 at 10, 23-25. Gilbert responds that because he did not have an opportunity to develop his ineffective-assistance-of-trial-counsel claim in state court, he is entitled to an evidentiary hearing in this court. Doc. 14 at 6.

## A.    Gilbert Procedurally Defaulted Ground Three

Gilbert included this claim in his amended Rule 3.850 motion as Ground Three, *see* Ex. 13, but he abandoned the claim at his postconviction evidentiary hearing. At the evidentiary hearing, Gilbert's postconviction counsel stated:

> MR. HAINE [Postconviction Counsel]:  . . . [W]ith regards to the grounds that have been raised in the motion, in discussing each ground with Mr. Gilbert, we are prepared to go forward on Grounds 1, 2, 4 and 5. And we are going to abandon or not go forward on Ground 3.

Ex. 17 at 3-4. Gilbert did not say anything in response to counsel's statement—either at the time it was made or during his evidentiary hearing testimony. *Id*. at 4, 28-41.

The state circuit court specifically found that this claim was abandoned. Ex. 15 at 64 ("Ground 3 was abandoned."); Ex. 16. Gilbert did not challenge this determination in the state circuit court or as part of his postconviction appeal. Ex. 18. Gilbert's abandonment of this claim renders it procedurally defaulted on federal habeas review. *See O'Sullivan*, 526 U.S. at 842; 28 U.S.C. § 2254(b)(1); *see also, e.g.*, *Campbell v. Jones*, No. 16-15881-F, 2017 WL 4127621, at *4 (11th Cir. Mar. 9, 2017) (finding claim procedurally defaulted in identical circumstances).

## B.    Gilbert Makes None Of The Requisite Showings To Excuse His Procedural Default

Gilbert does not expressly invoke the *Martinez* exception, *see* Doc. 14, but even if he did, his allegations fall far short of satisfying the *Martinez* standard for

excusing a procedural default. Under *Martinez*, Gilbert must establish that (1) appointed counsel in his initial-review collateral proceeding (Attorney Haine) was ineffective under the *Strickland* standard; and (2) the underlying ineffective-assistance-of-trial-counsel claim is "a substantial one," *i.e.*, that it "has some merit." 566 U.S. at 14.

Gilbert has not made either of these showings. When Attorney Haine announced at the Rule 3.850 evidentiary hearing that he and Gilbert decided to abandon this claim, Gilbert did not express any dissent or dissatisfaction with counsel's statement—either at that time or during his (Gilbert's) testimony. Ex. 17 at 3-4, 28-41. Gilbert has not alleged any facts that would support a finding that Attorney Haine performed below constitutional standards. *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1265 (11th Cir. 2014) (holding that petitioner's generalized allegations that his state habeas attorneys were incompetent for failing to raise particular claims were insufficient to establish cause under *Martinez*).

Gilbert also has not demonstrated that his ineffective-assistance-of-trial-counsel claim is a substantial one. He presents nothing more than a generalized allegation that trial counsel gave "improper" and "erroneous" advice. *See Martinez*, 566 U.S. at 14; *see also Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333-34 (11th Cir. 2012) (vague and conclusory allegations are facially insufficient to

satisfy either *Strickland*'s performance or prejudice prong (citing *Borden v. Allen*, 646 F.3d 785 (11th Cir. 2011))).

Gilbert's procedural default of Ground Three, and his failure to excuse his procedural default, bars federal habeas review of Ground Three.

## IV.  CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S.

at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

It is **ORDERED** that:

1. The clerk of court shall change the docket to reflect that Ricky D. Dixon has been substituted as the Respondent in this action.

2. The clerk of court shall mail a copy of this Order and Report and Recommendation to Petitioner at his address of record (Santa Rosa

Correctional Institution) and to the address for Petitioner reflected on the Florida Department of Corrections Offender Network (Northwest Florida Reception Center Main Unit).

In addition, for the reasons set forth above the undersigned respectfully **RECOMMENDS** that:

1.  The amended petition for writ of habeas corpus, Doc. 4, challenging the judgment of conviction and sentence in *State of Florida v. Jacky Gilbert*, Leon County Circuit Court Case No. 2013-CF-20, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this <u>1st</u> day of February, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**